UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BENYEHUDAH WHITFIELD,
    Plaintiff,

v.                                                          03-CV-3014

DONALD SNYDER et al.,
    Defendants.

**Order**

The sole remaining claim in this case is Count 11 in the plaintiff's Amended Complaint (d/e 11), and the sole remaining defendants are: Brinkmeir, Terry, Noble and Workman. Count 11 of the Amended Complaint alleges:

> During the months of April, 2002, I was forced to be in a cell that had urine and feces on the walls and floor. And the first night I was placed in the cell, I was only provided with a small wrap, that only covered my body from the waist down, and I had to sleep over-night in that wrap, despite the fact that my cell was extreamly [sic] cold. This very same incident occurred again around the end of Nov., 2002, and, as a result, in both cases I experienced sleep deprivation . . .

(d/e 11, p. 6). The plaintiff never identified those responsible for the November incident, but he did identify those he believed were personally responsible for the April incident: Brinkmeir, Noble, Terry and Workman.

A jury trial is set for February 14, 2006. Now before the court is the defendants' motion for summary judgment (d/e 150) and their motion to stay the trial (d/e 172) because defendant Workman has been called to active military duty. For the reasons below, the court denies the motion for summary judgment. The court also denies the motion to stay, only because it does not comply with 50 App. U.S.C.A. § 522, and the non-military defendants have not addressed why the trial should be stayed as to them. The defendants may resubmit a proper motion.

*Summary Judgment Motion-Undisputed Facts*

1. The plaintiff was transferred from Pinckneyville Correctional Center to Dixon Correctional Center ("Dixon") in April, 2002.

2. Immediately upon his arrival at Dixon, the plaintiff was placed in a crisis cell, and remained there for less than one week.

1

3. The plaintiff maintains that the crisis cell was covered in feces and urine, including the steel metal bunk he was supposed to sleep on. He says the cell was freezing cold, with no heat, and that he was given only a wrap to cover himself. He alleges that he complained to defendants Brinkmeir, Terry, Noble and Workman about the conditions and asked to be moved, to no avail.

*Analysis*

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

The defendants maintain that the plaintiff admits that Workman, Noble and Terry told him he would have to remain in the cell only until after he was seen by a psychologist the next morning, and that he did see a psychologist the next morning. They assert that he has essentially admitted that he made no further complaints about the temperature of his cell after that visit and did not complain about the condition of his cell until he had been in it for more than 72 hours.

Suffice it to say that, while the defendants' cites to the record in some cases support their inferences, the record does not compel those inferences.[1] According to the plaintiff's deposition (drawing reasonable inferences in his favor), the plaintiff was transferred to a crisis cell at Dixon because he was suicidal. (Plaintiff's Dep. P. 82).[2] He arrived there around 2:00 in the afternoon on a Wednesday. He testified that he was supposed to remain in a crisis cell for 72 hours and then be transferred to segregation. *Id.* at p. 81. The cell was covered in urine and feces (including the steel bunk), was extremely cold ("I was freezing in there"), he had only a wrap to cover himself, and was given no cleaning supplies. *Id.* at 82-87. On his arrival, he complained about the conditions of the cell and was reassured that a doctor would be summoned to talk to the plaintiff so that he could get out of the cell, or at least get a blanket or "whatever." *Id.* at p. 84. By the time the work shift changed, around 5 or 6:00 that evening, it became apparent that no doctor would be coming. The plaintiff then complained verbally to defendants Workman, Noble and Terry "about the fact I was freezing in there, about the fact that the cell was filthy, and they refused to do anything about it." He also complained to defendant Brinkmeir at some

---

[1] The defendants rely entirely on the plaintiff's deposition and the statements he made in an "amendment" he filed (d/e 95, p.2). They offer no affidavits of their own.

[2] That might explain why the plaintiff was given only a small wrap for clothing and no mattress, but does not explain the feces, urine or extremely cold temperatures as described by the plaintiff.

point who, according to the plaintiff, said he knew the plaintiff was a troublemaker, that he was not going to move the plaintiff, and, "Welcome to Dixon." *Id.* at p. 83. Because of the feces on the steel bunk and the cold temperatures, the plaintiff had to "sit at that door, stay up at that door, and I tried my best, even though I couldn't sleep, so I was just in that position, man, all that day because, I mean, that was the only way I could keep warm." *Id.* at 87. He states in his response he was shivering and had to "ball up on the floor in a corner in order to try and stay warm, which did no good." (d/e 161 p. 8). The plaintiff remained in the crisis cell until the following Monday, but it is not clear if the conditions remained the same the entire time.

Looking at the record in the light most favorable to the plaintiff, the court cannot rule out a reasonable inference that the conditions in the plaintiff's cell amounted to "cruel and unusual punishment," and that the remaining defendants knew about it and did nothing, though they could have. Accordingly, summary judgment must be denied.

However, the defendants correctly point out that Count 11 does not include a retaliation claim, and it is too late to tack that claim on to count 11. Count 11 mentions only the conditions in the cell, and this court clearly stated in its order of March 1, 2005, that Count 11 is the lone count remaining. Adding a retaliation claim to that count now would unfairly prejudice the defendants and unduly and unnecessarily delay this case. This case proceeds solely on the Eighth Amendment claim

*Motion to Stay Trial*

Counsel for defendants has been informed that defendant Workman has been activated "via a 'Presidential Call Up' effective September 9, 2005. He is currently at Hueneme military training base in California presumably awaiting deployment to Iraq for a 365 day term." The defendants ask for a stay pursuant to the Service-members Civil Relief Act, 50 App. U.S.C.A. 501 et.seq. Section 522 of that Act requires the court to stay an action upon on service-member's application if the application includes both:

> "(A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the service-member's ability to appear and stating a date when the service-member will be available to appear; and,
>
> (B) A letter or other communication from the service-member's commanding officer stating that the service-member's current military duty prevents appearance and that military leave is not authorized for the service-member at the time of the letter."

Additionally, Section 525(b) allows the plaintiff to proceed against the other co-defendants who are not in military service, with the approval of the court, even if the matter is stayed as to the service-member.

The defendants have not attached the required letters and therefore their motion must be denied on that basis. The defendants may resubmit their motion in compliance with the Act. Alternatively, defendant Workman might consider testifying by phone or video conference from California, if he is still in California and is authorized to do so. At this point, the trial will remain as scheduled, until a proper motion is before the court.

IT IS THEREFORE ORDERED:

1) The motion for summary judgment by defendants Brinkmeir, Terry, Noble and Workman is denied (d/e 150). This case proceeds to trial solely on the Eighth Amendment claim against them regarding the conditions of confinement in the plaintiff's crisis cell in April, 2002.

2) The defendants' motion to stay trial is denied (d/e 172), with leave to resubmit in compliance with 50 App. U.S.C.A. § 521.

Entered this 27th day of January , 2006.

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE