UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BENYEHUDAH WHITFIELD,
    Plaintiff,

v.        03-CV-3014

DONALD SNYDER et al.,
    Defendants.

### Order

Before the court is the plaintiff's "Objections to Errors Committed During Trial and Motion for new Trial" (d/e 196) and Defendants' objections thereto.

The test for determining whether to grant a new trial is whether "'the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Shick v. Illinois Dep't of Human Serv.*, 307 F.3d 605, 610 (7th Cir. 2002)(brackets in original)(other citations omitted). "Only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000).

*Final Pretrial Conference*

The plaintiff argues that he did not have notice of the Final Pretrial Conference on February 9, 2006. It is true that the final pretrial conference was originally rescheduled to February 14th, the day of the trial, because of conflicts in the court's calendar. (2/6/06 text entry). An earlier opening became available, however, so the final pretrial was rescheduled for February 9, 2006. (2/8/06 text entry). The plaintiff says he did not receive notice of this change. The plaintiff also says he did not receive the proposed final pretrial order filed in January, 2006 (d/e 180), until the court faxed it to him on February 9, 2006 (during the final pretrial conference).

Even taking the plaintiff's assertions as true, the plaintiff had ample notice of the claim set for trial, that a final pretrial conference would be held, and that he needed to provide a list of witnesses (which he did). Nearly one year earlier, in March, 2005, the court determined that the sole claim set for trial was the plaintiff's Eighth Amendment cell conditions claim. (d/e 148). The court reiterated in January 2006 that "this case proceeds to trial solely on the Eighth Amendment claim . . . regarding the conditions of confinement in the plaintiff's crisis cell in April, 2002." (d/e 173). On January 27, 2006, the plaintiff filed a list of witnesses he wanted to call at the trial and set forth the arguments he intended to introduce at trial to support his case (d/e 176). The sole remaining claim was simple-a conditions of confinement claim regarding cell conditions in April 2002–and proceeded only against only three defendants. The plaintiff

was given an opportunity to review the final pretrial order, which was simple and straightforward, and signified his assent thereto at the final pretrial conference. As to the plaintiff's ability to make objections at the final pretrial conference, the court does not generally rule on the admissibility of exhibits and witness testimony during the final pretrial conference. This is because, in the court's experience, admissibility determinations are better made during trial, not before. Therefore, objections the plaintiff might have made to admissibility at the final pretrial conference if he had received the proposed final pretrial order earlier would have been denied as premature, with leave to make the objections again at trial. In sum, the plaintiff had ample notice of the issues to be discussed at the final pretrial; lack of notice of the date change of the hearing, if that occurred, did not prejudice him.

*Trial*

The plaintiff asserts that he did not have sufficient time before trial to review the exhibits on the defendants' exhibit list. Yet the defendants only introduced five relatively short exhibits at the trial: Plaintiff's medical records around the relevant date (April 22, 2002); two grievances; the wing log at the Dixon psych unit on April 22, 2002; and the log for blankets and wraps. The first three the plaintiff should have already had. The last two he could have gotten in discovery (he says he asked for these documents in discovery, but offers nothing in support), and he certainly knew about them by February 9, the date of the final pretrial conference. Further, the plaintiff had time to review the documents before trial and during the two-day trial; the documents were not lengthy or complicated. In any event, the plaintiff does not explain how it would have affected the outcome if he had these documents earlier. The plaintiff's own testimony at trial on the conditions of his cell was too vague and ambivalent to support a jury verdict in his favor.

The plaintiff also asserts that the court interrupted his questioning, despite the fact that the defendants' attorney had not objected. It is true that the court interrupted when it appeared the plaintiff was traveling down irrelevant paths, asking repetitive questions, or expounding lengthy narratives rather than asking questions. It is the court's duty to ensure an orderly and efficient trial. For example, the plaintiff testified that prison officials have mentally ill inmates clean the cells. The plaintiff was allowed to make his tangential point--that the inmates who are supposed to clean the cells are mentally unable, unmotivated and untrained to do so properly-- but the plaintiff continued to belabor the point with repetitive questions and narratives. The defendants did not dispute that inmates sometimes smeared feces in the cells and that inmates, not guards, clean the cells. The defendants *did* dispute seeing any feces in the *plaintiff's* cell; the jury was allowed to believe that testimony. The general policy of having inmates clean cells was not at issue. The issue was the condition of the *plaintiff's* cell. The plaintiff's own testimony on the extent of the feces and urine in *his* cell on April 22, 2002, was too vague and contradictory to infer those conditions were objectively serious enough to implicate the Eighth Amendment.

The plaintiff also asserts the court should have appointed him standby counsel. "There is no constitutional or for that matter statutory right to counsel in federal civil cases-only a statute that authorizes the district judge to request, but not to compel, . . . , a lawyer to represent an

2

indigent civil litigant." *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)(citations omitted); 28 U.S.C. § 1915(e)(1).  The question is: "'Given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?'" *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995)(brackets in *Zarnes*), *quoting Farmer*, 990 F.2d at 322 (7th Cir. 1993).  "Although a good lawyer may [do better than a *pro se* plaintiff], that is not the test, for if it was "'district judges would be required to request counsel for every indigent litigant.'" *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997), *quoting Farmer*, 990 F.2d at 322.

Plaintiff appeared competent to proceed *pro se* at all times during the litigation and trial.  Nor would have appointed counsel made a difference in the outcome.  The plaintiff's filings and his legal arguments in court show that he is intelligent, with a literate command of language and law.  The court is not without sympathy for the death of the plaintiff's sister (which the court has not confirmed but has no reason to disbelieve), but that sad fact did not justify delaying the trial, in light of the significant time and expense already incurred in getting the plaintiff, the defendants, and the jury to the courthouse, and arranging all the video witnesses, and in light of the relative simplicity of the case.  The plaintiff had ample time–years-- to prepare for trial on this one claim.  He was able to and did present his case cogently.

The plaintiff raises other objections to the trial, but those objections are without merit.  The plaintiff did not object to the jury instructions at trial, nor does the court see anything wrong with the jury instructions.  Nor was the jury's verdict against the manifest weight of the evidence.  The plaintiff's own testimony about the conditions he suffered would not have supported a jury verdict in his favor.

*Costs*

Generally, the court orders the parties to bear their own costs in prisoner civil rights litigation.  This case, however, and the plaintiff's other cases before this court, have put an exceptional and disproportionate strain on the resources of the court, marshals and the defendants.  This case named 47 defendants in an ever-expanding retaliation conspiracy.  The plaintiff's case 04-cv-3036 added at least 62 defendants to that conspiracy.  Though the retaliation claims survived notice pleading, they had no factual merit.  Those claims and nearly all the defendants in both cases were dismissed on summary judgment, after review of reams of "evidence," leaving only one or two claims and a handful of defendants in each case.  Further, the plaintiff's motion practice during the pendency of all his cases before this court has been excessive.  Most of the motions were ultimately without merit but still required significant time to fairly consider and decide, unfairly reducing the time and attention available for other pending prisoner civil rights cases.

The court believes that the award of some costs to defendants is appropriate, pursuant to Fed. R. Civ. P. 54(d).  *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)(upholding assessment of costs against indigent pro se plaintiff–"...[T]he rule that indigent prisoners, like anybody else, may be required to reimburse costs others have expended defending the prisoners'

unsuccessful suits serves the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike."). The defendants have submitted costs for the plaintiff's transcript of $546.00. (d/e 201). In light of the plaintiff's indigency, and the fact that one of the plaintiff's claims did survive summary judgment, the court will grant costs in the amount of $250.00.

*Leave to Appeal In Forma Pauperis*

The plaintiff's motion for leave to appeal *in forma pauperis* is revived. (See July 21, 2006 text order). An appeal taken in "good faith" is an appeal that "a reasonable person could suppose . . . has some merit." *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000). The court feels confident of its decisions in this case, but the case does have a lengthy procedural history, and the plaintiff challenges the court's impartiality in the handling of the trial. In the interests of transparency, the court believes it should grant leave to appeal *in forma pauperis*.

IT IS THEREFORE ORDERED:

1) The plaintiff's motion for a new trial is denied (d/e 196).

2) Costs are awarded to the defendants in the amount of $250.00.

3) The plaintiff's motion to appeal *in forma pauperis* is revived and is granted (d/e 202). The court reporter is directed to prepare a transcript of the trial and of the February 9, 2006, final pretrial conference, and to provide a certified copy of the transcripts to the plaintiff, costs to be borne by the United States. The plaintiff's trust fund ledger indicates a negative balance, so no initial partial filing fee is assessed. However, the agency having custody of the plaintiff is directed to forward monthly payments of 20 percent of the preceding month's income credited to the plaintiff's account to the Clerk of Court each time the plaintiff's account exceeds $10.00 until the appellate filing fee ($455.00) is paid in its entirety.

Entered this <u>20th</u> day of <u>October</u>, 2006.

s\Harold A. Baker

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE
